LINK: 23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:** (In Chambers)

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant Southern California Edison Company's ("SCE" or "Defendant") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, filed on September 22, 2014. (Docket No. 23.) Plaintiff Felipe Rodriguez, Jr. opposed on October 13 and filed an amended opposition on October 22. (Docket Nos. 39, 45.) Defendant replied on October 27.[1] (Docket No.53.) The Court finds the matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

## I.
## BACKGROUND

The following facts are taken from the evidence presented in support of and in opposition to the motion. The facts set forth below are undisputed unless otherwise noted.[2]

---

[1] Curiously, although Defendant references "the page limitations imposed on this Reply" as a basis for its inability to address "all of the mischaracterizations" in Plaintiff's opposition (Reply at 1, 4), Defendant uses only 15 of the 25 pages allotted to it. C.D. Cal. Local Rule 11-6 ("No memorandum of points and authorities . . . shall exceed 25 pages in length, excluding indices and exhibits, unless permitted by order of the judge.").

[2] Plaintiff submitted "Additional Material Facts in Opposition to Defendant's Motion for Summary Judgment or Summary Adjudication of Issues." (Docket No. 47.) Those "additional" facts, however, largely overlap with Plaintiff's responses in the opposition separate statement. As such, the Court references Plaintiff's responses to Defendant's purported facts in this section.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

### A.     Plaintiff's Employment with SCE/SONGS

Plaintiff initially began his employment with SCE as a Meter Reader on October 15, 2007.  Statement of Undisputed Facts ("SUF") 1.  In 2008, Plaintiff applied for the position of Officer of Emergency Services, commonly referred to as a firefighter, with the San Onofre Fire Department ("SOFD").  SUF 2.  At the time Plaintiff applied for the firefighter position, Daniel J. Ensminger was the Manager of Fire Protection Services and Fire Chief of the SOFD.  SUF 3.  Ensminger was also the hiring manager for SOFD and participated in the selection of Plaintiff for the firefighter position.  SUF 4-5.  Plaintiff began working as a firefighter at the San Onofre Nuclear Generating Station ("SONGS") on or around November 10, 2008.  SUF 6.  At all relevant times, the SOFD was responsible for fire and emergency services at SONGS.  SUF 7.

### B.     Plaintiff's First Termination and Subsequent Reinstatement

Shortly after Plaintiff was hired in November 2008, Defendant claims Ensminger received complaints from various captains about Plaintiff's conduct during training and other performance related issues.  SUF 62.  Plaintiff was terminated on or around July 20, 2009 for unprofessional conduct.  SUF 63.

Plaintiff disputes these purported facts, stating that he performed his job well with commendations from his former supervisor.  Pl. Resp. to SUF 62-63.  He claims he was terminated after complaining that he was subjected to racially-charged remarks because he is Hispanic, including being called a "beaner," "cabana boy," and "wetback" and was singled out to receive old firefighting gear.  Id.  Defendant maintains that Plaintiff made no complaints to SCE, formal or informal, regarding any alleged harassment and/or discrimination based on his race before his termination on July 20, 2009.  SUF 65.

Following his termination, Plaintiff initiated a grievance pursuant to a Collective Bargaining Agreement.  SUF 64.  On November 24, 2010, Plaintiff sued SONGS and Ensminger for discrimination, harassment, retaliation, and wrongful termination.  SUF 64; Pl. Resp. to SUF 62-63.  That case was ultimately settled with an agreement to reinstate Plaintiff to the firefighter position at SONGS and other consideration.  Id.  The merits of Plaintiff's allegations were not adjudicated and there were no admissions by either party as to the merits of the grievance or the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

civil lawsuit. SUF 66.[3] The action was dismissed with prejudice and Plaintiff was reinstated on or around January 10, 2011. SUF 67; Los Angeles Super. Ct. Docket, Case No. BC441970.

In or around February 2011, Plaintiff requested time off for baby bonding. SUF 70. On March 2, 2011, Sedgwick CMS, the third party disability and leave administrator for SCE, approved Plaintiff's claim for paid family leave benefits beginning February 9, 2011. Pl. Resp. to SUF 70-71; Ex. T. The parties dispute whether Ensminger objected to or tried to deny Plaintiff the time off. SUF 70; Pl. Resp. to SUF 70. In any event, Plaintiff received a "Memo-To-File – Excessive Absenteeism" on February 27, 2012 for "excessive use of unprotected time off (sick time)[.]" SUF 70-71, 73, Ex. 15. The parties dispute whether Plaintiff qualified for leave under the Family Medical Leave Act or California Family Rights Act, apparently due to whether the time between Plaintiff's termination and subsequent reinstatement is included in calculating Plaintiff's accumulated time off. SUF 72-73; Pl. Resp. to SUF 72-73.

On or around January 9, 2012, Captain Robert MacKenzie signed a "Memorandum for File" regarding Plaintiff's failure to use appropriate personal protective equipment in responding to an incident. SUF 69. Although the memorandum was a "non-disciplinary administrative action," it was cited as part of the reason for Plaintiff's termination in a letter signed by Steve Crowell from Labor Relations. Pl. Resp. to SUF 69.

### C. SOFD Policies, Procedures, and Operating Guidelines

The SOFD maintains policies, procedures, and operating guidelines, which are designed to protect the public and for worker's safety as well as to ensure compliance with controlling law governing the operation of fire departments. SUF 8. During the time that Plaintiff worked at SONGS, one such policy required all firefighters to maintain a valid Ambulance Driver Certificate, which is required by the DMV for private entities that operate ambulances. SUF 10-11.[4]

---

[3] Plaintiff attempts to dispute this fact by stating, "As part of the settlement, SCE admitted that it was wrong in firing Plaintiff." Pl. Resp. to SUF 66. The Court has reviewed the January 10, 2011 letter from Ensminger on behalf of SCE and it contains no admission of wrongdoing on behalf of either party. Id.; Reply at 5. When a party so blatantly misrepresents facts to the Court, that party's credibility is severely undermined. Such misrepresentations also tend to suggest that the party does not believe that a truthful recitation of the relevant facts will support his claim. In the future, Plaintiff is admonished that all representations made to the Court must be supported by the evidence cited.

[4] Not all public entities have such a requirement. For example, the Los Angeles Fire Department does not require an Ambulance Driver Certificate if the operator has a firefighter's license. SUF 11. The parties do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

In particular, SOFD Standard Operating Guideline SOG-SAF-0002, Rev. 2 states:

> As the state of California vehicle law requires all operators of motor vehicles to have a valid operator's license, no Fire Department member shall operate any vehicle without all appropriate and valid licenses or certifications. The San Onofre Fire Department requires the following licenses/certifications maintained current at all times:
>
> • California DMV Class B drivers license, with appropriate endorsement(s)
> • California DMV Ambulance driver certificate.
> • California DMV Medical Examiners certificate.
> • California DMV Class C drivers license (Captains / Chiefs)

SUF 13. SOG-SAF-0002, Rev. 2 further states, "It is each member's responsibility to ensure their licenses and certifications are current, and copies are provided to the Training Officer to be maintained on file." SUF 14. The Nuclear Organization, Fire Protection Procedure, SO123-XIII-20, Section 6.7.3 provides, "Personnel performing ambulance driver duties shall maintain current Ambulance Driver Certification." SUF 15. SOFD Standard Operating Guideline, SOG-AD-0012 sets forth "rules of professional conduct that every member of the San Onofre Fire Department is expected to adhere to. Failure to do so will result in disciplinary action ranging from counseling to dismissal." (Ensminger Decl., ¶ 9, Ex. 2.) Those rules include "follow[ing] [SOFD] Standard Operating Guidelines (SOGs), policies, and procedures" and not "engaging in any activity that is prohibited by any HR policies and guidelines." Id.

### D.  Discovery That Plaintiff's Ambulance Driver Certificate Had Been Revoked

The California Highway Patrol ("CHP") conducted annual inspections of the SOFD to renew its Authorized Emergency Vehicle Permit. SUF 20. In or around early 2012, the CHP notified the SOFD of the annual ambulance inspection, which included an inspection of all firefighters' certifications and licenses. SUF 21.[5] In or around March 2012, a SOFD Personnel

---

dispute that Plaintiff's Class B firefighter's license was in effect at all relevant times.

[5] The Court has reviewed Fact Nos. 22-24 regarding the SOFD's "Affidavit of 13CCR 1101(b) and/or 13372 VC prohibitions [¶] Ambulance Attendant." SUF 22-24. That Plaintiff signed the affidavit without indicating any adverse action had been taken in connection with his Ambulance Driver Certificate is immaterial because Plaintiff did not fall under any of the prohibitions listed in the affidavit and was not in violation of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

Certification Template was prepared for each firefighter for the CHP inspection, which required each firefighter to provide copies of the applicable certifications and/or licenses. SUF 25-26. Plaintiff provided the SOFD with a copy of the applicable licenses, including a copy of the Ambulance Driver Certificate that was revoked by the DMV in 2011. SUF 27.

On March 28, 2012, the CHP notified the SOFD that Plaintiff's Ambulance Driver Certificate had been revoked effective October 5, 2010. SUF 29. When Ensminger and Mackenzie discussed the issue with Plaintiff on March 28, they advised Plaintiff to report to work on March 30, 2012, after which he would be allowed to go to the DMV to obtain information regarding the revocation of his Ambulance Driver Certificate. SUF 30-31. On March 30, Plaintiff provided Ensminger with a DMV information request printout and two DMV notices entitled "Order of Refusal, Suspension, Revocation," dated September 21, 2010, and "Notice of Decision," dated December 22, 2010. SUF 32-33. When Ensminger asked Plaintiff if he knew of anything that could have potentially resulted in the revocation of his Ambulance Driver Certificate in October 2010, Plaintiff stated "no." SUF 34. Plaintiff was placed on leave pending an investigation. SUF 35, 60.

Plaintiff's ambulance certificate was reinstated on April 5, 2012, less than a week after his visit to the DMV. (Rodriguez Decl., ¶ 7.) The parties dispute the number of occasions on which Plaintiff operated an ambulance with a revoked ambulance certificate, however, it is undisputed that Plaintiff was assigned such duty at least 14 times. SUF 53.

### E. Investigation Into Plaintiff's Knowledge That His Certificate Had Been Revoked

On or around April 20, 2012, the SOFD held a fact-finding meeting to discuss the revocation of Plaintiff's ambulance certificate and Plaintiff's continued operation of an ambulance. SUF 46. During that meeting, Plaintiff claimed that he did not know of any issue with his ambulance certificate until March 30, 2012. SUF 47. According to Defendant, Plaintiff's employment was terminated based on failure to maintain a valid Ambulance Driver Certificate and lack of integrity demonstrated during the investigation. SUF 49, 50 ("Plaintiff's assertions that he did not know and/or did not recall that his California Ambulance Driver Certificate was revoked by the DMV were not credible."). Plaintiff responds that he was fired due to discrimination, retaliation, and harassment by Ensminger, who he had previously sued for discrimination. Pl. Resp. to SUF 49, 50.

---

terms of the affidavit. Pl. Resp. to SUF 22-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

     Plaintiff admits that, in September 2010, he received the DMV's "Order of Refusal, Suspension, Revocation." SUF 36. That Order states that Plaintiff's Ambulance Driver Certificate was "revoked effective October 5, 2010 . . . pursuant to §13372(b)(4) of the Vehicle Code." SUF 37. It further states that this action was begin taken because "on or about April 12, 2005, you were convicted under Section 243(e)(1) of the Penal Code, battery: spouse/ex spouse/date/etc, a misdemeanor involving force, violence, threat or intimidation." SUF 38. Defendant does not dispute that the 2005 conviction was expunged from Plaintiff's record in August 2007. Pl. Resp. to SUF 38. The Order also provides that Plaintiff may request a hearing, but that such a request "shall not operate to stay the action for which notice is given." SUF 39-40. Plaintiff requested and attended a hearing in connection with the revocation order. SUF 42-43.

     Plaintiff claims he was unaware of any revocation of his ambulance certificate when he provided the SOFD with a copy of it in advance of the CHP inspection. Pl. Resp. to SUF 28, 29, 37, 40, 54. He states that he did not know of an issue with his ambulance certification until March 30, 2012. Id. He claims he was advised by the DMV that his ambulance certificate was in effect because he had appealed the possible revocation and that an ambulance certification is not necessary because he had a Class B firefighter's license that permitted him to operate an ambulance. Id.[6] In addition, after Plaintiff appealed the revocation, he received no further communication from the DMV advising him that his appeal had been denied or that his ambulance certificate was no longer valid. SUF 40.

     The SOFD also claims it had no knowledge that Plaintiff's ambulance certificate had been revoked, despite the fact that Plaintiff's "pull notice" (which provides the status of certificates/licenses) was in his file by December 2, 2011. SUF 28, 29, 55, 56, 57. Ensminger states in his declaration that the CHP notification of discrepancies in the pull notices on March 28 "was the first time that the SOFD was aware that Plaintiff's Ambulance Driver Certificate had been revoked." Ensminger Decl. ¶ 19. Defendant claims that the driver's files were maintained by the SOFD and the "pull notices" were maintained by a separate department. SUF 58-59. That department failed to understand the significance of the abbreviation "AMB/REV" (which apparently means an ambulance certificate has been revoked) in the pull notice. SUF 59. Plaintiff disputes SOFD's lack of knowledge on the grounds that Glen de Korne, the HR Supervisor, testified that he informed supervisors of any issues with pull notices, including Plaintiff's supervisors. (Pl. Resp. to SUF 59; Ex. U at 61:10-62:15; 95:16-96:25, Ex. V.)

---

[6] As it turns out, this information is incorrect as applied to a private ambulance operator.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

## II.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Wash. Mut. Inc. v. United States, 636 F.3d 1027, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) ("[The non-moving party] can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor.") (citations omitted).

Both parties must support their factual positions by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.
## DISCUSSION

The gravamen of Plaintiff's complaint is that Defendant terminated him in retaliation for filing a previous lawsuit alleging employment discrimination. The motion and opposition papers present two very different views of the facts. According to Defendant, Plaintiff raised complaints of harassment only after he was "caught in his attempt to hide the revocation of his Ambulance Driver Certificate[.]" (Mem. at 2.) Plaintiff's opposition, on the other hand, tells the story of an employee who received solid performance reviews, but was punished more severely than his white co-workers for failing to have a valid ambulance certificate on file because he is Hispanic.

To prevail on this motion for summary judgment, Defendant must show that Plaintiff has not presented competent evidence to establish a *prima facie* case of retaliation or discrimination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

If Plaintiff can do so, the burden shifts to Defendant to produce legitimate, nondiscriminatory reasons for its actions, and Plaintiff must then create a genuine issue of material fact that those reasons are merely pretextual to conceal an unlawful motive. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Using this framework, the Court analyzes each cause of action below.

> **A. Plaintiff Has Raised Genuine Issues of Material Fact as to His First Cause of Action for Retaliation**

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

> **1. Plaintiff's *Prima Facie* Case**

Plaintiff has established a *prima facie* case that he was retaliated against because of the 2010 lawsuit and has presented evidence that he was treated differently than other firefighters who were not terminated as a result of failing to have proper certifications on file.

Although Plaintiff does not dispute the text of the policies and operating guidelines, he does dispute whether they were applied to white and Hispanic firefighters equally. Pl. Resp. to SUF 10, 13, 14, 15, 16, 17, 18, 26. For example, Plaintiff disputes the portion of Fact No. 17, which states that "[a]ll firefighters were expected to report the lapse of any required licenses and/or certifications" with evidence that suggests that some firefighters may not have been expected to do so.[7] As to Fact No. 18, Plaintiff does not dispute the importance of complying with policies and procedures, but he does dispute that those requirements were applied equally. Because Plaintiff argues that the requirements applied differently to him because he is Hispanic and because he filed the 2010 employment discrimination lawsuit, Defendant's argument that

---

[7] The Court notes that Defendant mischaracterizes Plaintiff's testimony in Fact No. 17. Plaintiff's testimony was that he "had" an ambulance certificate, not that he "had to have" one. Compare Harris Decl. ¶ 4, Ex. 2 at 74:2-6 (Plaintiff testified that "when [he] started with the company as an officer of emergency services, it was [his] understanding that [he] had a valid ambulance driver's certificate") with Fact No. 17 ("At the time that Plaintiff started his employment as a firefighter at SONGS, he understood that he had to have a valid Ambulance Driver Certificate."). Defendant's mischaracterization is especially troubling given Plaintiff's belief that "the fact that [he] held a Class B firefighter's license obviated the need for an ambulance certificate." (Rodriguez Decl. ¶ 14.) This is another example of a party misrepresenting evidence that supposedly supports an undisputed fact. The Court has little patience or tolerance for such conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

Plaintiff's responses to Fact Nos. 17 and 18 are "entirely irrelevant to raise a dispute" (Reply at 3-4) is simply unfounded.

The parties do not dispute that Geoff Harvey, a white firefighter, allowed his ambulance certificate to lapse and was only given a three-day suspension.  SUF 78.[8]  Without any explanation, Defendant asserts that "the circumstances surrounding the revocation of Plaintiff's Ambulance Driver Certificate are inapposite of Harvey."  (Reply at 9.)  The difference Defendant seems to seize upon to distinguish Harvey from Plaintiff is their degree of knowledge and intent: Harvey was "forthright and acknowledged that it was an oversight on his part" (SUF 78), whereas Defendant contends Plaintiff knew about the revoked ambulance certificate and did nothing to remedy it.  As explained in more detail below, this is a material factual dispute that cannot be resolved through a motion for summary judgment.

Moreover, two or three other firefighters operated ambulances at the SONGS facility without having a valid medical certificate on file, and thus no ambulance certification, but they were not disciplined.  Pl. Resp. to SUF 10, 17, 78.

> 2. **A Jury Could Find That Defendant's Non-Discriminatory Reasons for Plaintiff's Termination Were Pretext**

Defendant explains it had a non-discriminatory reason for Plaintiff's termination: "Plaintiff's employment was terminated based on failure to maintain a valid Ambulance Driver Certificate and lack of integrity demonstrated during the investigation."  SUF 49.  Plaintiff has presented sufficient evidence to suggest that these reasons for his termination were pretext.

First, Defendant's argument that Plaintiff was terminated for a nondiscriminatory reason – operating an ambulance despite the fact that his ambulance certificate was revoked – assumes that Plaintiff knew his ambulance certificate was revoked, which is a hotly disputed factual issue.  See, e.g., SUF 28, 29, 54 & Pl. responses thereto.  Although the DMV revocation order states that it goes into effect on October 5, 2010, and that an appeal would not stay the effective date, Plaintiff states he was advised that his Class B firefighter's license permitted him to operate an ambulance regardless of the ambulance certificate.  Even though Plaintiff's reliance on the DMV's statement was misplaced (as the DMV's advice was incorrect when applied to private

---

[8] The Court has reviewed the evidence cited by Plaintiff in response to SUF 78 and finds there is no support for Plaintiff's assertion that Harvey "had no valid California Driver's license for weeks before a CHP inspection/audit in March of 2012[.]"  Pl. Resp. to SUF 78; Reply at 9.  Once again, Plaintiff is admonished to carefully consider all representations made to the Court to ensure they are supported by the evidence cited.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

entities), a reasonable jury could find Plaintiff's explanation credible. The additional facts that Plaintiff never received notice of the resolution of his appeal and that it appears the underlying basis for the DMV revocation order was mistaken (Plaintiff's conviction was expunged in 2007, well before the DMV issued the revocation order), could bolster a potential jury finding that Plaintiff did not know his ambulance certificate had been revoked.

Defendant makes much of the distinction between Plaintiff's revoked ambulance certificate and Harvey's "lapsed" certificate, and other firefighters' possession of current medical cards despite the fact that the medical cards that were on file were outdated. (SUF 78; Reply at 4.) This distinction, however, becomes less meaningful given that Plaintiff was able to obtain a valid ambulance certificate from the DMV less than a week after his visit to the DMV. (Rodriguez Decl. ¶ 7.) Based on this record, it appears that had Plaintiff known of this issue earlier, it could have been rectified at that time.

Second, as to lack of integrity, Defendant's investigation was conducted by Ensminger, the very person who Plaintiff had sued previously for discrimination. See Crowell Dep. 52:13-53:7 (Crowell relied primarily on information provided to him by Ensminger in fact-finding meeting); 85:19-86:9 (Crowell did not investigate matter personally; relied on Ensminger's allegation of Plaintiff's intentional conduct). A reasonable jury could find that Plaintiff was not given a balanced and disinterested review by Ensminger.

After reviewing the facts in the light most favorable to Plaintiff, the Court cannot find, as a matter of law, that Defendant's reasons for terminating Plaintiff — (1) that he operated an SOFD ambulance knowing that his ambulance certificate had been revoked and (2) that he lacked integrity during the investigation — were legitimate, non-retaliatory reasons for Plaintiff's termination. From this record, there is a genuine dispute of material fact as to whether Plaintiff knew his license had been revoked and whether termination was the appropriate response. A reasonable jury could find Plaintiff's version of events credible, given that he was able to reinstate his ambulance certificate within one week of visiting the DMV and less than two weeks from when he claims he first learned of the problem. Furthermore, Plaintiff has put forward enough evidence to create a material factual issue as to whether Ensminger's investigation and ultimate conclusion was in retaliation for Plaintiff's previous lawsuit and based on Plaintiff's race. Indeed, the SOFD's finding that Plaintiff "lacked integrity" during the investigation is precisely the type of credibility inquiry that should be reserved for the jury. Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . ."); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (employer's evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

Plaintiff was terminated for a legitimate, nondiscriminatory reason "can involve no credibility assessment").

In light of the material factual disputes discussed above, the Court need not reach the issue of whether the Operations Support Training department's "oversight" in failing to notify SONGS about an issue with Plaintiff's ambulance certificate after the pull notice dated July 21, 2011 constitutes "knowledge" on the part of Defendant. SUF 61; Pl. Resp. to SUF 61. Similarly, the Court need not address the issues related to Plaintiff's request for baby bonding leave or withholding pay after his termination.

Thus, the motion is **DENIED** as to Plaintiff's first cause of action for retaliation.

**B.    Genuine Issues of Material Fact Exist as to Plaintiff's Second Cause of Action for Discrimination**

To establish a prima face case for disparate treatment discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.  See Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003); Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1125 (9th Cir. 2009) (individuals are similarly situated when they have similar jobs and display similar conduct).

It is undisputed that Plaintiff is Hispanic, and therefore a member of a protected class. There is some dispute as to whether Plaintiff was a good firefighter in the sense of responding well to criticism and being a team player, but it is generally undisputed that he was qualified for the firefighter position.  Plaintiff alleges he suffered the adverse employment actions of a six-week suspension pending the investigation into his ambulance certification, and then termination.  As discussed above, Plaintiff has presented enough evidence to show that Harvey, who is arguably similarly situated to Plaintiff but outside Plaintiff's protected class, was treated more favorably than Plaintiff despite the fact that Harvey also drove ambulances without a valid ambulance certification.

For the reasons set forth above with respect to the retaliation claim, the motion for summary judgment as to the discrimination cause of action is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

**C.  Summary Judgment Is Warranted as to Plaintiff's Third Cause of Action for Harassment - Hostile Work Environment**

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003), as amended Jan. 2, 2004. "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' [Citation omitted.] In addition, '[t]he working environment must both subjectively and objectively be perceived as abusive.' [Citation omitted.]" Id. at 642.

The majority of the allegedly harassing comments (*e.g.* "wetback," "cabana boy") were made before Plaintiff's first termination in July 2009, and are the subject of the parties' settlement agreement and Plaintiff's subsequent reinstatement. Compare 2010 Complaint (Pl. Ex. L) ¶¶ 8-19 with First Am. Compl. ¶¶ 13-19. According to the settlement agreement, the previous action was dismissed with prejudice. Settlement Agreement (Ex. JJ) at 2. Plaintiff is therefore collaterally estopped from bringing these same claims again.

As for the time period after Plaintiff's reinstatement in January 2011, Plaintiff only refers to comments made by Matt Hays that (1) Plaintiff did not "deserve to have any new gear because old gear is satisfactory to being a beaner since beaners are typically wearing old worn-out apparel"; and (2) Plaintiff could not take another firefighter's place in the San Diego County office "because it's too close to the Mexican border" and Hays "[didn't] want [Plaintiff] to be tempted to go pick up any family or relatives and bring them across illegally."  (Rodriguez Dep. at 141:8-147:22; 150:19-152:23.)  Based on this record, Plaintiff has not presented evidence sufficient to show that the allegedly harassing comments made by a single co-worker were sufficiently severe or pervasive to create a hostile work environment.

As such, summary judgment as to the third cause of action for hostile work environment is **GRANTED**.

**LINK: 23**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7996 GAF-JCGx | Date | November 6, 2014 |
|---|---|---|---|
| Title | Felipe Rodriguez, Jr. v. Southern California Edison Company, et al. | | |

# IV.
# CONCLUSION

Accordingly, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The hearing scheduled for Monday, November 10, 2014 is VACATED.

**IT IS SO ORDERED**.